UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK FARMER,

     *Plaintiff*,

CASE NO. 2:18-cv-13023
DISTRICT JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE PATRICIA T. MORRIS

*v*.

COMMISSIONER OF SOCIAL
SECURITY,

     *Defendant*.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (R. 13 & 17)

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (R. 13), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 17), be **GRANTED**, and this case be **AFFIRMED**.

### II. REPORT

#### A.    Introduction and Procedural History

This is an action for judicial review of a final decision by the Commissioner of Social Security denying Plaintiff Derrick Farmer's claim for Disability Insurance Benefits (DIB) under Title II, 42 U.S.C. § 401 *et seq.* and Supplemental Security Income (SSI) benefits. (R. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by

1

Notice of Reference, this case was referred to the undersigned Magistrate Judge. Currently before the Court are Plaintiff's and Defendant's cross-motions for summary judgment (R. 13, 17).

Plaintiff filed the applications for SSI and DIB on September 11, 2015, and February 10, 2016, respectively, alleging onset on December 30, 2014. (R.8 at PageID.183, 189.) His claim was denied at the initial level on September 1, 2015. (R.8 at PageID.126, 127.) After an administrative hearing was held at Plaintiff's request, (R.8 at PageID.147-150), Administrative Law Judge (ALJ) John A. Ransom issued a decision finding that Plaintiff had not been under a disability from her alleged onset date of July 26, 2008, through the date of the decision, February 16, 2018. (R.8 at PageID.49.) The Appeals Council denied Plaintiff's request for review. (R.8 at PageID.27-29.) This action followed. (R. 1).

### B. Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.*

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that

3

>is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
>(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .
>
>(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
>(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered him or her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the

claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, at step one, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016, and had not engaged in substantial gainful activity since December 30, 2014, the alleged onset date. (R.8 at PageID.41.) Next, the ALJ determined Plaintiff had the following severe impairments: osteoarthritis, degenerative disc disease, carpal tunnel syndrome, depression, and anxiety. (*Id.*) Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R.8 at PageID.41-42.) The ALJ found that Plaintiff could not perform any past relevant work. (R.8 at PageID.47.) Finally, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R 404.1567(b) and 416.967(b), except that he

> can occasionally climb ramps or stairs, and must avoid all exposure to vibration. He can perform simple, routine tasks.

(R.8 at PageID.42-47.) The ALJ further found that jobs that she could perform existed in significant numbers in the national economy. The ALJ noted that the vocational expert's (VE's) testimony was consistent with the Dictionary of Occupational Titles (DOT). (R.8 at PageID.48.)

### A. Administrative Record

#### 1. Medical Evidence

5

The Court has reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 2. Application Reports and Administrative Hearing

#### i. Plaintiff's Function Report

Plaintiff competed an adult function report on October 5, 2015. (R.8 at PageID.232-39.) In the report, Plaintiff indicated that he is able to care for his personal needs. (R.8 at PageID.233.) He needs reminders, which he described as "someone saying its time," and although it appears he is able to cook, he indicated he cooks only monthly. (R.8 at PageID.234.) Plaintiff does not do any yard work because of pain and lack of energy. (R.8 at PageID.234-35.) Plaintiff does not shop and doesn't have finances to maintain. (R.8 at PageID.235.) Plaintiff does not have any hobbies or any social activities because of lack of energy and pain. (R.8 at PageID.236-37.) Plaintiff is able to follow written instructions although it may take him a minute, and he is "o.k." with spoken instructions. (R.8 at PageID.237.) Plaintiff does not handle stress well and he needs glasses and a brace/splint for his hand, back, and knee. (R.8 at PageID.238.)

#### ii. Plaintiff's Testimony at the Hearing

An administrative hearing was held in Plaintiff's case on September 14, 2017. (R.8 at PageID.55-71.) Plaintiff testified that he has a driver's license and is able to drive. (R.8 at PageID.58.) Plaintiff last worked in 2014 for General Motors on the production line where he was required to lift between 25-50 pounds. (R.8 at PageID.59-60.) When asked what problems he has that keep him from working, Plaintiff responded, "Well, I have a

6

very bad back problem where my leg, right leg goes numb. Knee problems where it's hard for me to stand for a long period of time. And I pretty much, I mean last year I had open heart surgery where, you know, I have a recorder in my heart." (R.8 at PageID.60.) Plaintiff clarified that the recorder monitors his heart but does not act as a pacemaker. (R.8 at PageID.61.) Plaintiff rated his overall pain at 7 out of 10, and his knee pain at 9 out of 10. (R.8 at PageID.62.) Plaintiff stated that, at the time of the hearing, his heart was "fluttering like real bad" and that his heart makes it "hard for me to breathe when I'm laying down." (*Id.*) Plaintiff also experiences numbness and tingling in both hands due to recently diagnosed carpal tunnel syndrome. (R.8 at PageID.63.) Plaintiff receives shots in both hands every three months but the shots do not help alleviate the symptoms in his hands. (*Id.*) Plaintiff testified that he no longer mows the lawn because he "tried to cut the grass one day and almost had a heart attack" and that "I can clothe myself, maybe clean up in my space a little bit" but that he cannot vacuum, sweep, mop, stand or wash dishes. (R.8 at PageID.63-64.) Plaintiff spends his days "at home, watching TV, reading, doing little things like that." (R.8 at PageID.64.)

In response to questions from his lawyer, Plaintiff testified that he can stand comfortably for "a good five minutes[,]" at a time, can sit "from ten to 20 minutes" at a time, and can lift "five to ten pounds" at a time." (R.8 at PageID.64-65.) Plaintiff lies down during the day for "five to six hours." (R.8 at PageID.65.) Plaintiff uses knee braces and a back brace, elevates his legs, and uses ice and heat to take care of the swelling in his knees. (*Id.*) Plaintiff's knees can "give[] out when I'm, you know, if I have to walk upstairs, something like that. I stay in a home with no stairs." (R.8 at PageID.66.) Plaintiff has a

7

"little difficulty" with zippers so he doesn't wear clothes with zippers very often and he can only write about a paragraph before he "would get a lot of tightness, lose feeling in my right hand, fingers tingling and then start moving up the arm." (*Id.*) Plaintiff relies on his girlfriend or younger brother to handle the chores around his home that he cannot do. (R.8 at PageID.66-67.) Plaintiff does not sleep well "from the heart issues because I have a hard time breathing and you know, laying down. And I get [INAUDIBLE] going through panic or anxiety attack." (R.8 at PageID.67.)

### iii.    The Vocational Expert's Testimony at the Hearing

Vocational Expert (VE) Tim Shaner also testified at the hearing. (R.8 at PageID.68-71.) He began by classifying Plaintiff's past work as an assembler as heavy work. (R.8 at PageID.68.) Then the ALJ posed the first hypothetical:

> Assume a person of the claimant's age, education and past work, who's able to perform light work as defined by the regulations except he is limited to, he can occasionally climb ramps or stairs and must avoid all exposure to vibration. He can perform simple routine tasks.

(R.8 at PageID.68-69.) The VE testified that such a person could not perform any of Plaintiff's past relevant work. (R.8 at PageID.69.) The VE also stated that such a person could perform other jobs in the national economy such as the following: cashier, DOT 211.462-010 (1.2 million jobs); cleaner, light, DOT 323.687-014 (440,000 jobs); and inspector, DOT 559.687-074 (117,000 jobs). (*Id.*) When asked if those jobs would be available for someone who also needed to lie down outside of the normal 15-minute morning and afternoon break time, the VE indicated that the no work would be available. (*Id.*) The VE also stated that his testimony was consistent with the DOT but that his

testimony regarding breaks and lying down periods was based on his own professional experience. (R.8 at PageID.70.) When questioned by Plaintiff's attorney, the VE indicated that all of the jobs mentioned would be eliminated if the person had to elevate his feet at unexpected and intermittent times throughout the day or if the amount of handling and fingering was reduced to only occasional handling and fingering. (*Id.*)

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such

9

as whether the claimant meets the statutory definition of disability and how to measure her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544.[1] The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not

---

[1] As Plaintiff's claim was filed before March 27, 2017, she continues to receive the benefit of the "treating source rule" found in § 404.1527. For claims filed on or after that date, the rules in § 404.1520c apply instead. 20 C.F.R. § 404.1527.

give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the person's RFC, or the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242.

For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

11

In accordance with SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination[2]—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## B. Analysis

Plaintiff argues the "ALJ's conclusions regarding plaintiff's medical impairments are based upon misleading or mistaken statements and also ignore critical evidence, and [thus] are not supported by substantial medical evidence." (R.13 at PageID.734-39.)

I will address Plaintiff's more specific concerns under this heading in turn. Plaintiff notes that the ALJ stated that Plaintiff's complaints of limitations due to his heart condition, *i.e.*, panic, chest pain, and anxiety, were not supported by the record. Plaintiff finds this conclusion erroneous, citing only Plaintiff's response to the ALJ's question at the administrative hearing where Plaintiff indicates he cannot work due to his back problems, knee problems, and the fact that he had heart surgery and a recorder implanted. (R.13 at PageID.735.) I do not find Plaintiff's reference to the recorder in his heart to contradict the lack of evidence of complaints of pain. No one questions whether Plaintiff had heart

---

[2]Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c).

surgery and a recorders implanted. The question the ALJ was addressing was whether Plaintiff suffered any limiting symptoms because of that surgery or his heart condition in general. The ALJ considered the treatment records from Plaintiff's cardiologist and noted that Dr. Chambers reported that Plaintiff was getting along fine after his valve replacement surgery, and there were not any indications in Dr. Chambers'ss notes, that Plaintiff suffered any anxiety or chest pain related to any cardiac issues. (R.8 at PageID.46.) The ALJ's conclusion is supported by multiple references in the medical evidence of record: Plaintiff was consistently noted to be asymptomatic (R.8 at PageID.367, 371, 373, 377, 405, 407, 409, 410, 412.) Only once did Plaintiff complain of "occasional twinges of chest pain." (R.8 at PageID.369.) I therefore find the ALJ's conclusion is amply supported by substantial evidence.

Plaintiff next challenges the ALJ's statement that Plaintiff "has not required persistent treatment for any physical condition." (R.8 at PageID.46; R.13 at PageID.735.) Plaintiff then cites to the existing treatment records. I find the statement by the ALJ to be somewhat obtuse but, regardless, it does not address nor undermine the ALJ's analysis of the salient questions. If the quantity of treatment records were of import to the analysis, this statement might call for further examination. However, since the quantity of records is not relevant to whether the Plaintiff suffers from disabling symptoms, I suggest it is, at best, harmless error.

Plaintiff next finds fault in the ALJ's statement that Plaintiff has not required surgery for his back (R.8 at PageID.46), noting that Plaintiff underwent surgery in 2008. (R.13 at PageID.736.) Plaintiff contends that the ALJ's statement is "erroneous or

13

misleading." *Id*. However, I find Plaintiff's characterization to be misleading since he takes the ALJ's statement out of context. The ALJ first summarized Plaintiff's previous claim for benefits, and the findings made therein. Next, the ALJ addressed only the evidence relevant to the time period following the prior December 2012 decision. (R.8 at PageID.45-46.) Thus, when the ALJ indicated Plaintiff had not undergone surgery, it was in the context of a summary of the evidence after 2012.

Plaintiff also argues that the ALJ erred in stating that Dr. Geoghegan found that Plaintiff's grip strength was "decreased" bilaterally by 20% when it "remained" at 20%. (R.13 at PageID.737.) Plaintiff further argues that this "would be a huge factor in plaintiff's ability to work as a cashier, cleaner, or inspector." (*Id.*) Plaintiff is correct in his citation to Dr. Geoghegan's findings, *i.e.*, Dr. Geoghegan concluded that Plaintiff's "[g]rip strength is decreased bilaterally with 20% remaining," but Dr. Geoghegan also stated that there is "no digital dexterity loss bilaterally." (R.8 at PageID.540.) As noted by the ALJ and Defendant, "Dr. Geoghegan, an examining source, did not provide functional limitations." (R.8 at PageID.47; R.17 at PageID.768.) As to functionality, the ALJ relied more heavily on Dr. Hahn's opinion. (R.8 at PageID.46.) Dr. Hahn specifically noted Plaintiff's "bilateral hand grip decrease with 20% remaining w/ positive Tinel's sign, but no evidence of hand muscular atrophy or limited wrist ROM (range of motion) bilaterally. Therefore, decreased hand grip is likely D/T effort related." (R.8 at PageID.106.) Since the only medical source to address functional capacity despite Plaintiff's carpal tunnel issues expressly considered and relied on Dr. Geoghegan's accurate statement, the ALJ's mistaken statement is harmless error.

14

Plaintiff also criticizes the ALJ's statement that Dr. Sardelli indicated that Plaintiff "has no mechanical reason for alleged left knee pain," when this same doctor also stated that Plaintiff's pain "should hopefully resolve" with time. (R.13 at PageID.737.) Plaintiff contends that the doctor's reference to the pain hopefully resolving is "an indication that there was some *reason* for the pain, if not a mechanical one." (*Id*.) Plaintiff's logic escapes me. I fail to see how a doctor's mere recognition of a patient's claim of pain and concomitant hope that pain resolves even addresses, let alone conflicts with or undermines, his statement that there is "no mechanical reason for the alleged left knee pain." Indeed, Dr. Sardelli's characterization of "alleged" knee pain speaks volumes. The ALJ did not err or mislead in citing Dr. Sardelli's opinion to support his findings of less than disabling symptoms.

Finally, Plaintiff contends that although the ALJ gave great weight to Dr. Hahn's opinion, he did not incorporate all the limitations given in his opinion, nor did the ALJ adequately explain his reasons for his assessment. (R.13 at PageID.738-39.) Plaintiff focuses on the portion of Dr. Hahn's assessment where he recommends that Plaintiff be given a sit/stand option. (R.13 at PageID.738; R.8 at PageID.105.) Although cases from our district exist to support the notion that where an ALJ gives great weight to an opinion, the ALJ must also explain why she did not include the full opinion when formulating the RFC, other cases have not been so demanding of the ALJ. *Callahan v. Comm'r of Soc. Sec.*, 2019 WL 1375516, at *1 (E.D. Mich. Mar. 27, 2019) (collecting cases). As stated by the Chief Judge of this district after noting the conflicting case law, "the 'fundamental question [for this Court] . . . is whether the ALJ's decision is supported by substantial

15

evidence." *Id.* (citing *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004). Here, I suggest that the decision is so supported and that any failure to include a sit/stand option was harmless since the jobs of inspector and cashier, at the light work exertional level, have been found to continue to exist in significant numbers even where a sit/stand option was required. *See, e.g.*, *Marquez v. Comm'r of Soc. Sec.*, 2019 WL 2251564 (E.D. Mich. May 1, 2019) (cashier); *Bellman v. Comm'r of Soc. Sec.*, 2019 WL 1521994 (E.D. Mich. Mar. 20, 2019) (inspector); *Hernandez o/b/o Gotay v. Comm'r of Soc. Sec.*, 2019 WL 2051896 (E.D. Mich. Feb. 7, 2019)(cashier); *Torman v. Comm'r of Soc. Sec.*, 2018 WL 1278917 (E.D. Mich. Jan. 25, 2018) (inspector).

### C. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (R. 13), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 17), be **GRANTED**, and this case be **AFFIRMED**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States*

16

*v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 31, 2019                    S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 31, 2019                    By s/Kristen Castaneda
                                       Case Manager